UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LORI COHEN, | ) | CASE NOS. 1:03CV0695 and 1:04CV132 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs, | ) | OPINION AND ORDER |
| | ) | |
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon Defendant's Motion for Summary Judgment (ECF DKT # 127).  For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

**I. FACTUAL BACKGROUND**

Before the March 2000 automobile accident, Lori Cohen had been an Account Manager for the Health Care Products Division of Philips Medical Systems (Cleveland), Inc. (previously known as Marconi Medical Systems, Inc., and hereafter referred to jointly as "Philips") for approximately sixteen years.  Her responsibilities included the sale of Philips' radiological equipment throughout the exclusive sales territory of Dade and Broward counties, one of Philips' largest and most profitable markets.  As the sole Dade-Broward representative in the region, Cohen served as "the face of Marconi," and was responsible for all customer relations, sales, and service-related issues.  (Cohen Dep.at 239)  By all accounts, Cohen's pre-accident job

performance was exemplary.  However, in March of 2000, Cohen was involved in an automobile accident and sustained a traumatic brain injury which required over a year of extensive treatment and rehabilitation.  Unable to return to work, Cohen was administratively terminated by Philips in March of 2001.  From March through September of 2000, Cohen was covered by Philips' short-term disability program through CIGNA.  From September 2000 to the present, Cohen has been covered under CIGNA's long-term disability program.

In the summer of 2001, Cohen requested that Philips rehire her into her prior position; and, beginning in August 2001, Philips began to gather information regarding Cohen's suitability.  Cohen submitted the following in support of her desire to be rehired: (1) notes from Brooks Rehabilitation Centers covering approximately February through March 2001; (2) a neuropsychological evaluation conducted by Dr. Anthony Stringer on May 6, 2001; (3) a June 6, 2001 letter written by neuropsychologist Dr. John Sass; (4) an August 6, 2001 letter written by neuropsychologist Dr. Louise Gaudreau; and (5) an August 15, 2001 progress summary also written by Dr. Gaudreau.  Philips' consultant, Dr. Clifford Sonnie, reviewed Cohen's supporting documentation, and after discussing Cohen's prognosis with Dr. Sass and Dr. Gaudreau, submitted a written summary of his findings to Philips indicating that due to cognitive impairments, Cohen was no longer suitable for the Accounts Manager position.  On September 7, 2001, Cohen was notified of Philips' decision not to rehire her.

Dr. Stringer's May 6, 2001 neuropsychological evaluation indicated that Cohen suffered from "impaired visual form perception," "deficits in fine motor speed," "severely impaired delayed recall of visual information," "moderately impaired verbal memory," "moderately reduced ability to process verbal information," "reduced problem solving skills," "difficulty

concentrating," and "difficulty in reading social cues." (Sonnie letter, Cohen Dep. Ex. #27 at 2, quoting from Stringer report, Cohen Dep. Ex. #28.) Ultimately, Dr. Stringer concluded that Cohen "would work best in a quiet location... with minimal distractions." (*Id*.)

Dr. Sass' June 6, 2001 letter indicated that Cohen could perform sales duties on a part-time basis only, without any customer contact for the first month after returning to work. Dr. Sass went on to recommend that Cohen be given a heavily reduced workload for the second and third months, and be given a part-time schedule with no more than four days of work per week for the ensuing fourth and fifth months. Furthermore, Dr. Sass indicated that Cohen was not capable of covering the sales territory alone and that she would need a job coach to "proofread her work and provide her feedback regarding bid submissions and to check for accuracy." (Sass Dep. at 145-46; Sass Dep. Ex. #13). In a subsequent conversation with Dr. Sonnie, Dr. Sass indicated that, after further consideration, he agreed with Dr. Stringer's characterization of Cohen's cognitive state. (Sass Dep.at 159-60.)

Dr. Gaudreau's August 6, 2001 letter and August 15, 2001 progress summary indicated that Cohen was capable of returning to work. However, in a subsequent conversation with Dr. Sonnie in December 2001, Dr. Gaudreau indicated that her opinion had changed and that she believed that Cohen continued to suffer from substantial cognitive defects that rendered her "not able to... perform all the material and substantial duties" of the Philips sales job. (Gaudreau Dep. at 93, 96; Gaudreau Dep. Ex. #3.)

On November 1, 2001 Cohen was hired on a part-time basis with Diagnostic Imaging ("Diagnostic"), a medical equipment sales company; however, in November of 2002, Cohen's employment was terminated by Diagnostic for unprofessional behavior and inappropriate

comments made to customers. In February of 2003, Cohen was hired by SRI, a surgical equipment sales company and competitor with Philips, where she remained employed as of February 2005.

On April 16, 2003, Cohen filed suit against Philips, alleging that she was capable of performing the requirements of her prior position and that Philips' refusal to rehire her constituted a discriminatory action in violation of the Americans with Disabilities Act ("ADA"). On July 15, 2003, Cohen filed a second suit alleging that Philips' decision not to rehire her violated the Florida Civil Rights Act. On March 12, 2004, the United States District Court for the Northern District of Ohio, Eastern Division, consolidated the two cases.

## II. LAW AND ANALYSIS

### Standard of Review

### Motion for Summary Judgment

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issue of material fact rests with the moving party. In ruling upon the motion, this court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transportation.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

**Plaintiff's burden under the ADA**

Philips claims that Cohen cannot be considered "disabled" under the ADA and asks for summary judgment as a matter of law.  The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individuals; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, *learning*, and *working*."  29 C.F.R. § 1630.2(i). (Emphasis added).  Available evidence suggests that Cohen's cognitive impairment sufficiently meets the ADA's standard for disability under part (A).

Neuropsychological evaluations indicate Cohen's cognitive impairments substantially limit her ability to perform major life activities such as learning and working.  Dr. Stringer's objective evaluation concluded Cohen suffered severe memory impairment, a reduction in the ability to process verbal and visual information, reduced problem-solving skills, difficulty concentrating, difficulty reading social cues, and would work best in a quiet environment with minimal distractions.  Dr. Sass agreed generally with Dr. Stringer's findings.  Similarly, Dr. Gaudreau found Cohen's immediate memory and ability to encode visual information to be at the bottom 2% compared to the general population, delayed recall of visual information at the bottom 5%, moderate impairment of verbal memory, and severe impairment of visuospatial memory and visual perception skills.  (Gaudreau Dep. Ex. #3 at 2; Gaudreau Dep. at 66, 69; 71-73.)  Furthermore, Dr. Gaudreau believed that Cohen had "reached maximum medical improvement... and her deficits are likely to be permanent in nature.  (Gaudreau Dep Ex. #3, at 3.)  However, Defendant argues Cohen's inability to perform a single job cannot be considered a

substantial limitation of a major life activity. *Murphy v. UPS*, 527 516 (1999). Yet, the available evidence suggests that Cohen's cognitive impairment has the potential to substantially limit her options in a wide array of employment opportunities involving memory and recall, multi-tasking, interpersonal communication, knowledge of particular products and services, and time requirements. Dr. Gaudreau cited Cohen's termination from Diagnostic in November of 2002 for unprofessional an inappropriate conduct as a likely result of substantial, ongoing, cognitive deficiencies.

**Qualified to perform essential functions**

Philips argues even if Cohen could be considered "disabled" under the ADA, summary judgment is nonetheless proper because Cohen was unqualified to perform the essential functions of the Philips sales position. The ADA prohibits employers from discriminatory conduct in refusing to hire qualified individuals with disabilities; however, where an individual is not qualified for the position sought, the employer's decision not to employ the person cannot be deemed a violation of the ADA. *Bratten v. SSI Services*, 183 F.3d 625, 635 (6th Cir. 1999). The ADA defines a "qualified" individual as a person with a disability who, with or without reasonable accommodations, can perform the essential functions of the employment. 42 U.S.C. § 1211(8). The evidence presented suggests Cohen was not rehired because her cognitive impairments were such that she was unable to perform the essential functions of the position with or without reasonable accommodations. Plaintiff presents no evidence which suggests otherwise.

As Account Manager for Philips' Health Care Products Division, Cohen sold radiological

equipment in an exclusive sales territory encompassing over forty-eight hospitals and diagnostic centers.  The territory in question was one of Philips' most competitive and lucrative markets.  In her position, Cohen served as "the face of Marconi"; was solely responsible for all sales and service-related issues; and was responsible for developing and maintaining a lasting rapport with clients.  The position was considered intellectually and physically demanding, and required long, unpredictable work hours in a fast-paced, high-stress environment.

In *Monette v. Electronic Data Sys.*, 90 F.3d 1173 (6th Cir. 1996), the court differentiated between (1) cases in which the plaintiff is not seeking a reasonable accommodation, but is instead making the straightforward claim that he or she can function capably in the position sought, and (2) cases in which the plaintiff challenges a particular job requirement as being unessential, or that he or she can do the job with reasonable accommodations on the part of the employer.  The instant situation is most properly analyzed under the first prong of *Monette*, as Cohen's own sworn testimony clearly indicates she expected to "jump right back in" to the job without the need for any accommodations whatsoever.  (Cohen Dep. at 418-19.)  While Cohen argues she was fully capable of returning to work and performing her duties in September of 2001, Cohen's own deposition (Cohen Dep. at 418-19) and her numerous correspondences with CIGNA indicate that, as late as January of 2002, she explicitly acknowledged her inability to return to work and perform the essential functions of the Account Manager position.  The burden is on Cohen to demonstrate she is qualified under the ADA to perform the essential functions of the position.  However, Cohen's evidence fails to satisfy the burden.  Rather, her medical evidence demonstrates the doctors initially thought it would be "beneficial" for her prospects towards recovery if she were to return to work on a limited, part-time basis.  The pertinent

question for this analysis is not whether a return to work might facilitate Cohen's rehabilitation, but whether she was qualified under the first prong of *Monette* to return to her prior position without accommodations.  The aforementioned neuropsychological evaluations support Philip's assertion that, in refusing to rehire Cohen, it reasonably acted on evidence demonstrating Cohen's inability to perform the essential functions necessary for the job.  Furthermore, the Sixth Circuit has held that an individual cannot establish he or she is qualified to perform the essential functions of the job when the individual's own doctor has concluded to the contrary.  *Dietelbach v, Ohio Edison Co.*, No. 99-4245, 1 Fed. Appx. 435, 437, 2001 U.S. App. LEXIS 698, *7 (6th Cir. Jan 12, 2001).

Under the second prong of *Monette*, it is plaintiff's burden to establish that a *reasonable* accommodation exists which would allow plaintiff to perform the essential functions of the job.  However, Cohen made it clear that she did not need any accommodations; and even if Dr. Sass' June 6, 2001 letter is interpreted as a request for accommodations, such accommodations are not reasonable under the ADA.  The Sass letter indicated that Cohen should be allowed to return to her prior position on a limited, part-time basis only.  Sass concluded that, for the first three months, Cohen should not have any direct customer contact; instead, Cohen should serve in a support capacity for up to ten pre-existing accounts.  During the fourth and fifth months, Cohen should be limited to a part-time schedule of no more than four days per week.  Furthermore, Sass indicated Cohen's cognitive impairment rendered her incapable of covering the required territory alone, and would need the assistance of another employee to handle all remaining accounts, monitor client relationships, and proofread all of Cohen's work.  According to Dr. Sass, the essential functions of the Account Manager position could only be adequately performed if

Philips were to hire or reassign an additional employee; however, the ADA does not require an employer to accommodate an individual by shifting an essential job function onto another (*Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 728 (6th Cir. 2000)); nor is an employer required to hire new employees to perform functions or duties of a disabled employee's job (*Bratten*, 185 F.3d at 632 (6th Cir. 1999)).

### III. CONCLUSION

Plaintiff Lori Cohen's "cognitive impairment" sufficiently qualifies as a disability under the ADA; however, Cohen is not qualified to perform the essential functions of her prior position with or without reasonable accommodations. Furthermore, Cohen presents no evidence that Philips' decision not to rehire her was discriminatory in nature, or based upon anything other than this uniform, medically-supported conclusion. Therefore, Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

**DATE: June 15, 2006**

s/Christopher A. Boyko

**CHRISTOPHER A. BOYKO**
**United States District Judge**